**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emad Zaki, | No. CV-16-01920-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Banner Pediatric Specialists LLC, et al., | |
| Defendants. | |

Before the Court is Defendants Banner Pediatric Specialists, LLC, Banner Health Network, and Banner Medical Group's (collectively Banner) Partial Motion to Dismiss. (Doc. 12.) The motion is fully briefed, and neither party requested oral argument. For the reasons below, the motion is granted.

## BACKGROUND

Plaintiff Emad Zaki is a physician specializing in pediatric nephrology. (Doc. 18, ¶ 16.) In 2010, Banner hired Zaki to provide pediatric nephrology care and on-call coverage. (*Id.*, ¶ 25.) Pursuant to a Physician Employment Agreement (PEA), Zaki's on-call coverage obligation was not to exceed "fifty percent (50%) of [Banner's] coverage burden for the Physician's specialty." (*Id.*, ¶ 27.) Banner assured Zaki that it would hire a second pediatric nephrologist so that Zaki would not be responsible for all on-call coverage for his specialty. (*Id.*, ¶ 29.) In the event Zaki worked more than his contractual on-call coverage obligation, he was to receive ninety dollars per hour for such

work. (*Id.*, ¶ 31.) The PEA further provided that Zaki was entitled to twenty-eight days of paid time off (PTO) annually. (*Id.*, ¶ 32.) Banner, however, did not hire another pediatric nephrologist during Zaki's tenure, which caused him to perform all on-call coverage responsibilities for his medical specialty and not use any PTO. (*Id.*, ¶¶ 33-35.)

On June 3, 2014, Zaki took leave from Banner to care for his father in Egypt. (*Id.*, ¶ 38.) While there, Zaki suffered a serious brain injury in a car accident. (*Id.*, ¶ 39.) Due to his injury, Zaki was unable to obtain medical clearance to resume work at Banner. (*Id.*, ¶ 40.) On December 29, 2014, Banner sent Zaki an email informing him that he would be terminated without cause, effective March 29, 2015. (*Id.*, ¶ 41.)

Sometime in April 2015, after Zaki's effective termination date, several physicians employed by Banner received incentive payments under Banner's Physician Incentive Plan (PIP) for their performance in 2014. (*Id.*, ¶ 43.) Zaki did not receive an incentive payment for his performance in 2014, despite his performance metric being equal to or better than many of the physicians who received incentive payments. (*Id.*, ¶ 44.)

On October 26, 2015, Zaki filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging various forms of discrimination during his tenure at Banner. (*Id.*, ¶ 45.) He received notice of right to sue from the EEOC on May 20, 2016. (*Id.*, ¶ 47.) On April 25, 2016, Zaki filed a complaint against Banner in Maricopa County Superior Court. (*Id.*, ¶ 51.) Zaki voluntarily dismissed his state court complaint on June 14, 2016 and concurrently filed an identical lawsuit in this Court. (*Id.*, ¶ 52.) On August 22, 2016, Banner filed a partial motion to dismiss, arguing that several of Zaki's claims are time-barred. (Doc. 12.)

## LEGAL STANDARD

The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568

F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations, however, are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

## ANALYSIS

Banner moves to dismiss as untimely Zaki's breach of contract and statutory unpaid wage claims, as well as those of his discrimination claims that are based on alleged adverse actions that occurred on or before June 3, 2014, the last day of Zaki's active employment.[1]

**I. Breach of Contract Claims**

In Count VI of the Amended Complaint, Zaki alleges that Banner breached the PEA by failing to: (1) compensate him for excess on-call coverage, (2) hire an additional physician specializing in pediatric nephrology, thereby causing him to be unable to use his accrued PTO, (3) compensate for his unused PTO, (4) pay his base salary during the ninety-day termination notice period, and (5) pay him a PIP incentive for 2014. (Doc. 18, ¶¶ 103-107.) Under Arizona law, breach of employment contract actions must be brought within one year of accrual. A.R.S. § 12-541(3). A breach of contract action generally accrues at the time the contract is breached. *See Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1027 (Ariz. Ct. App. 1992). Under the discovery rule, however, "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 966 (Ariz. 1995). Thus, Zaki's contract claims are timely only if they were brought within a year after he knew or reasonably should have known the underlying facts.

Zaki's contract claims are time-barred because they accrued over a year before

---

[1] Banner also moved to dismiss Zaki's Arizona Civil Rights Act claim, but Zaki has since amended his complaint to remove that claim, rendering that portion of Banner's motion moot.

June 14, 2016, the date he filed this action.  Several of the alleged breaches occurred sometime in 2014.  First, the PEA required Banner to compensate Zaki for excess on-call coverage "within thirty (30) days of the end of each calendar quarter."  (Doc. 18-1 at 18.)  Zaki's last day of active employment was June 3, 2014.  Thus, Zaki's claim that Banner failed to compensate him for excess on-call coverage accrued on July 30, 2014, the last date upon which Banner would have owed him compensation from excess on-call coverage.  Similarly, Zaki's claim that Banner failed to provide relief from excess on-call coverage by hiring an additional specialist accrued, at the latest, on June 3, 2014.  Given that Banner allegedly failed to provide relief from excess on-call coverage throughout Zaki's employment, Zaki certainly would have known that a cause of action existed by his last day of work.  Finally, Zaki's claim that Banner failed to compensate him for unused PTO accrued, at the latest, by the end of 2014, the last year in which Zaki could have accrued PTO.  The PEA provides that Zaki was entitled to twenty-eight days of PTO per year, and that unused PTO does not carry over from year to year.  (Doc. 18-1 at 19.)  Notably, the PEA does not state that Zaki would be compensated for unused PTO at the end of each year.  If, however, it is Banner's practice to compensate employees for accrued but unused PTO, then Zaki's claim would have accrued by December 31, 2014, the last year in which Zaki actively worked for Banner.  All of these claims were filed well beyond the one-year limitations period.

The remaining alleged breaches occurred sometime in April 2015.  The PEA states, in relevant part, that "[u]pon notice of termination by [Banner] . . . [Banner] also may direct the Physician to cease Physician's duties under this Agreement if [Banner] continues to compensate Physician during the ninety (90) days . . . following such notice of termination."  (Doc. 18-1 at 6.)  The PEA also states that a physician's base salary is paid in bi-weekly installments.  (*Id.* at 18.)  Thus, Zaki's claim that Banner failed to pay him his base salary during the ninety-day termination notice period accrued no later than April 12, 2015, two weeks after his effective termination on March 29, 2015.  Likewise, Zaki claims that Banner failed to pay his 2014 PIP incentive, but that breach occurred

- 4 -

sometime in April 2015, when Banner paid PIP incentives to other physicians but not to Zaki. This lawsuit was filed more than a year later.

Zaki contends that his contract claims were timely on April 25, 2016, the date he filed his state court complaint. He argues that his unpaid on-call coverage and PTO claims accrued on April 5, 2016 because A.R.S. § 23-353(A), which requires an employer to pay wages due to a discharged employee within the earlier of seven days after termination or by the next regular pay period, is implicitly incorporated into the PEA under Arizona law.[2] Zaki further argues that the limitations period was tolled by an agreement entered into by the parties. Finally, relying on A.R.S. § 12-504(A), Arizona's so-called "Savings Statute," Zaki argues that the filing of his complaint in state court tolled the statute of limitations such that this Court should consider his claims timely so long as they were timely when filed in state court. (Doc. 20 at 3-5.) Zaki's arguments are misguided for several reasons.

First, Zaki's unpaid on-call coverage and PTO claims did not accrue on April 5, 2016. Zaki conflates his unpaid wages claim under Arizona's wage payment laws with his breach of contract claims. Although "[i]t has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract," *Higginbottom v. State*, 51 P.3d 972, 975 (Ariz. Ct. App. 2002), it does not follow that A.R.S. § 23-353(A) alters the accrual date of Zaki's contract claims. Moreover, Zaki's argument ignores A.R.S. § 23-351(C), which requires that "[e]ach employer shall, on each of the regular paydays, pay to the employees wages due the employees up to such date." As previously noted, the PEA required Banner to compensate Zaki for excess on-call coverage within thirty days of the end of each calendar quarter, meaning such payments were regular due, at the latest, on July 30, 2014. Similarly, assuming Banner compensates employees for accrued but

---

[2] Zaki does not argue that his contract claim based on Banner's alleged failure to hire an additional pediatric nephrology specialist accrued in April 2015. Indeed, this alleged breach does not involve a failure to pay wages and, therefore, would not be covered by A.R.S. § 23-353(A).

- 5 -

1    unused PTO, payment for unused PTO would have been regularly due, at the latest, by
2    December 31, 2014, the last year in which Zaki actively worked for Banner. Thus, even
3    if Arizona's wage payments laws are implicitly incorporated into the PEA, Zaki's claims
4    related to unpaid on-call coverage and PTO accrued well over a year before Zaki filed his
5    state court complaint.

6    Second, assuming that Zaki's contract claims accrued in early April 2015, Zaki's
7    state court complaint was filed more than one year later and beyond the expiration of the
8    parties' tolling agreement. In relevant part, the tolling agreement states:

> The running of any statute of limitation with respect to all legal claims and causes of action that Emad Zaki, M.D. may have against Banner Health shall be tolled from March 28, 2016 through and including April 22, 2016 (the "Tolling Expiration Date"). Any such legal claims or causes of action *filed on or before the Tolling Expiration Date* shall be timely if such legal claim or cause of action would have been timely had it been filed on or before March 28, 2016.

(Doc. 21 at 12 (emphasis added); Doc. 18, ¶ 50.)[3]

Zaki argues that the agreement paused the running of the statute of limitations such that the time remaining on the limitations period when the agreement was entered into carries over when the agreement ends. (Doc. 20 at 3.) His interpretation, however, does not comport with the plain language of the agreement, which clearly states that claims which would have been timely if filed on or before March 28, 2016 would be considered timely if filed by April 22, 2016. Read as a whole, the tolling agreement gave Zaki only until April 22, 2016 to timely file his claims. Zaki did not file his state court complaint until April 25, 2016, three days late.[4]

---

[3] The Court may consider the tolling agreement even though it was not attached to the Amended Complaint because its contents are alleged therein and its authenticity is not questioned. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] Zaki's claim that Banner breached the PEA by failing to pay him a PIP incentive in April 2015 might have been timely when filed in state court. No party identifies the precise date in April that Banner made the PIP payments. If Banner made the payments on or after April 25, 2015, Zaki's PIP incentive claim would have been timely when filed in state court. Because the Court concludes, however, that Arizona's Savings Statute does not apply to this case, Zaki's PIP incentive claim is untimely because it was not filed in this Court until June 14, 2016.

- 6 -

Finally, assuming that all of Zaki's contract claims were timely filed in state court, Arizona's Savings Statute does not toll the statute of limitations in this case. The statute provides for automatic and discretionary relief depending on the manner in which the prior action was terminated. The statute provides, in relevant part:

> If an action is commenced within the time limited for the action, and the action is terminated in any manner *other than by* abatement, *voluntary dismissal*, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff, or a successor or personal representative, may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination.

A.R.S. § 12-504(A) (emphasis added). Zaki does not qualify for automatic relief under this section because his prior state court action was terminated by voluntary dismissal.

Nor does Zaki qualify for discretionary relief. A voluntarily dismissed action is eligible for such relief only where the dismissal was through a court order:

> If an action timely commenced is terminated by abatement, *voluntary dismissal by order of the court* or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

*Id.* (emphasis added). Because his prior state court action was terminated by voluntary dismissal *without* a court order, (Doc. 20-3), Zaki does not qualify for discretionary relief under this section. *Id.*; Ariz. R. Civ. P. 41(a)(1)(A).

Indeed, a close reading of the discretionary relief section of A.R.S. § 12-504(A) "contemplates that the party seeking to rely on the 'savings statute' should request a period of time up to six months within which to file a new action *at the time of dismissal [of] the prior action by the Court[.]*" *Bertrand v. Indus. Dev. Auth. of City of Chandler*, No. Civ. 89-1087-PHX-RCB, 1990 WL 264525, at *3 (D. Ariz. Sept. 13, 1990) (emphasis added); *see also In re Heparin Prod. Liab. Litig.*, 629 F. App'x 645, 647 (6th Cir. 2015) (affirming summary judgment on grounds that complaint was untimely and not saved by § 12-504(A) because plaintiffs did not seek leave of court before refiling).

To obtain such relief at the time of dismissal necessarily requires an order from the court in the earlier action. Accordingly, the Savings Statute does not apply and Zaki's filing of his state court action does not toll the limitations period in this case.[5]

## II. Statutory Unpaid Wages Claim

In Count V of the Amended Complaint, Zaki alleges that he is entitled to recover treble the amount of unpaid wages due to him at the time of his effective termination pursuant to Arizona's wage payment laws. Statutory claims for unpaid wages must be brought within one year of accrual.[6] *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 550-51 (Ariz. Ct. App. 2008). Zaki's effective termination date was March 29, 2015. Accordingly, A.R.S. § 23-353(A) required Banner to pay Zaki his final wages by April 5, 2015. Zaki did not file this action until June 14, 2016, more than a year later. His statutory unpaid wages claim is therefore time-barred.

## III. Employment Discrimination Claims

Zaki alleges in Counts II and III of the Amended Complaint that Banner discriminated against him on the basis of his national origin, gender, and age in violation of Title VII of the Civil rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). Both Title VII and the ADEA require that aggrieved persons file a charge of discrimination with the EEOC within 300 days of the unlawful employment practice. *Arizona ex rel. Horne v. Geo Group, Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674-75 (9th Cir. 1988). "This circuit treats this notice requirement as a statute of limitations." *Pejic*, 840 F.2d at 675. Claims not filed

---

[5] The Court also notes that Zaki bears the burden of articulating the reasons why discretionary relief is justified. *Jepson v. New*, 792 P.2d 728, 735 (Ariz. 1990). When determining whether a plaintiff is entitled to relief under § 12-504(A), "[t]he court should ascertain whether the plaintiff acted reasonably and in good faith, whether he prosecuted his case diligently and vigorously, whether a procedural impairment exists which affects his ability to file a second action, and whether either party will be substantially prejudiced." *Id.* (internal quotations and citation omitted). Though Zaki claims that § 12-504(A) applies, he fails to articulate the reasons why discretionary relief is justified.

[6] Arizona courts have not reached a consensus on whether the limitations period for statutory unpaid wage claims is determined by A.R.S. § 12-541(3), which applies to employment contracts, or § 12-541(5), which applies to liabilities created by statute. Both sections, however, provide for a one-year limitations period.

- 8 -

with the EEOC within 300 days are time-barred. *See Mulvihill v. Pac. Mar. Ass'n*, 587 F. App'x 422, 423 (9th Cir. 2014).

Zaki alleges multiple instances of discrimination during his time with Banner, including: (1) being required to provide all of the on-call coverage for his specialty area, (2) not being fully compensated for the on-call coverage he provided, (3) being denied a Pediatric Chair position, (4) removal from various leadership roles, (5) exclusion from an advanced leadership program, and (6) Banner's refusal to agree to contractual terms that were as favorable to Zaki as the terms it agreed to with other physicians.[7]  (Doc. 18, ¶¶ 63-68, 70, 75-79, 81.)  All of these actions occurred prior to June 3, 2014, the last day of Zaki's active employment.  Zaki filed his charges with the EEOC on October 26, 2015, 510 days later.  Thus, Zaki's Title VII and ADEA claims based on adverse actions that occurred during his active employment with Banner are time-barred.

Zaki argues that the allegedly discriminatory and less favorable contract provisions remained in force until the date of his effective termination on March 29, 2015, and thus his charges were timely filed with the EEOC 211 days later.  (Doc. 20 at 6.)  He cites no authority, however, that an employment discrimination claim based on comparatively less favorable contractual provisions re-accrues every day the allegedly discriminatory contract is in place, nor is the Court aware of any.  Rather, "[a]n employment discrimination claim accrues when the plaintiff knows of the allegedly unlawful employment decision*." Opsahl v. Int'l Longshore & Warehouse Union, Local 21*, 432 F. App'x 708, 709 (9th Cir. 2011).  Even if Zaki was unaware that his contract was comparatively less favorable at time he entered into it, surely he should have been aware of any comparatively less favorable provisions by his last day of active employment, after roughly 3 years of working under those conditions. *See Delaware State College v. Rick*, 449 U.S. 250, 257 (1980) ("Mere continuity of employment,

---

[7] Zaki also alleges that Banner unlawfully discriminated against him by failing to pay him a PIP incentive or for unused PTO earned in 2014, and by terminating him in March 2015.  Banner, however, does not move to dismiss these claims.  (Doc. 21 at 7 n. 2.)

- 9 -

without more, is insufficient to prolong the life of a cause of action for employment discrimination.").

## CONCLUSION

For the foregoing reasons, Zaki's claims for breach of contract and statutory unpaid wages are time-barred because they were filed over a year after accrual. Additionally, Zaki's Title VII and ADEA claims based on adverse actions during Zaki's active employment at Banner are time-barred because he did not file charges with the EEOC within 300 days of the allegedly unlawful employment practices. Accordingly,

**IT IS ORDERED** that Banner's Partial Motion to Dismiss, (Doc. 12), is **GRANTED** as follows:

1. Counts II and III of the Amended Complaint are dismissed to the extent they are based upon adverse actions that occurred on or before June 3, 2014, the last day of Zaki's active employment.

2. Counts V and VI of the Amended Complaint are dismissed.

Dated this 10th day of January, 2017.

Douglas L. Rayes
United States District Judge