**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emad Zaki,<br><br>          Plaintiff,<br><br>v.<br><br>Banner Pediatric Specialists LLC, et al.,<br><br>          Defendants. | No. CV-16-01920-PHX-DLR<br><br>**ORDER** |

Plaintiff Emad Zaki brings this employment discrimination lawsuit against Defendants Banner Pediatric Specialists LLC, Banner Medical Group ("BMG"), and Banner Health Network (collectively "Banner"), with claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Family and Medical Leave Act ("FMLA"). Zaki also brings a claim for breach of the covenant of good faith and fair dealing. Banner moves for summary judgment on all claims. (Doc. 111.) The motion is fully briefed.[1] (Docs. 118, 119.) For the following reasons, Banner's motion is granted in part and denied in part.

## **BACKGROUND**[2]

---

[1] Zaki's request for oral argument is denied because the issues are adequately briefed and oral argument will not aid the Court's resolution of the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] Banner moves to strike Zaki's separate controverting statement of facts because, in many respects, it fails to comply with Local Rule of Civil Procedure 56.1(b). (Doc.

Zaki is a pediatric nephrologist. He began working for Banner on October 1, 2010. On June 3, 2014, Zaki informed Banner that he was going to Egypt to care for his ailing father. On June 16, 2014, while still in Egypt, Zaki was in an automobile accident in which he suffered a serious traumatic brain injury. Medically unable to return to work, Zaki took FMLA leave. As of September 23, 2014, Zaki had exhausted his FMLA leave, but still was medically unable to return to work. As a result, Banner provided Zaki with additional unpaid leave.

On October 13, 2014, Jane Goeckel, a Human Resources Consultant with Banner, informed Zaki that he had exhausted his FMLA leave and sought a return-to-work ("RTW") date. On October 22, 2014, Dr. Carter, Banner's Regional Medical Director, received a text message from Zaki explaining that he still was waiting on a RTW date from his treating providers. On October 27, 2014, Goeckel sent Zaki a letter requesting that he update Banner with the status of his medical leave. The following day, October 28, Zaki informed Goeckel that his RTW date remained uncertain because he had yet to be medically cleared.

On November 11, 2014, Maria Baier, Zaki's primary care physician, stated that she anticipated Zaki would be medically cleared to return to work within 3 to 5 months. Baier, however, was unable to provide a specific RTW date. Baier also stated that it still was too early for her to predict any accommodations Zaki would require upon his return to work. On November 20, 2014, Zaki emailed Goeckel corroborating Baier's report, stating that he still lacked an exact RTW date, but that his treating physicians estimated he could return within 3 to 5 months.

On December 5, 2014, Goeckel sought an update from Zaki on his RTW date. On

---

120.) Although the Court agrees that Zaki's separate controverting statement of facts is non-compliant in several respects, the Court nonetheless will consider the statement because doing so does not materially affect the disposition of Banner's motion and, therefore, the Court can give Zaki's response full consideration without prejudicing Banner. *See McClure v. Country Life Ins. Co.*, No. CV-15-02597-PHX-DLR, 2017 WL 3268841, at *1-2 (D. Ariz. Aug. 1, 2017); *Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018) (discussing the myriad ways in which parties misuse separate statements of fact and otherwise fail to comply with the Local Rules governing them).

December 21, 2014, Zaki emailed Goeckel, attaching a letter from Baier, in which she estimated that Zaki could return to work in approximately 2 to 4 months.

During Zaki's ongoing leave of absence, Banner's Human Resources personnel and its physician leadership group had multiple discussion regarding Zaki and the status of his employment. In December 2014, Banner terminated Zaki, offering as its rationale that Zaki's absence and inability to provide a specific RTW date left Banner unable to offer pediatric nephrology services and unable to formulate a plan to provide for such services.

On December 29, 2014, Dr. Carter and Lisa Phalen, Chief Human Resources Officer of BMG—Arizona East Region, provided Zaki with notice of his termination. The notice explained that Zaki's termination would be effective March 29, 2015, and that if Zaki was released by his physician to return to work during the 90-day notice period, Banner would pay him his base salary for the remainder of the notice period. The next day, Goeckel emailed Zaki with additional notice of his termination. Zaki was not medically cleared to return to work until June 1, 2017, and, even then, it was with limitations and accommodations.

## **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the non-movant's opposition fails to cite specifically to evidentiary materials, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## **DISCUSSION**

The majority of Zaki's claims arise under Title VII, ADA, ADEA, and FMLA, each of which prohibits various types of employment discrimination. Generally, employment discrimination claims are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[3] *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (Title VII); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988) (ADEA); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1092 (9th Cir. 2001) (ADA). Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination or retaliation. "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124; *see also Pejic*, 840 F.2d at 874.

---

[3] The Ninth Circuit has rejected application of the *McDonnell Douglas* burden-shifting framework to FMLA interference claims. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003). Because Zaki's FMLA claim relies on such a theory, the burden-shifting framework does not apply to that claim.

- 4 -

If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123-24. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

"Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation and citation omitted). A plaintiff "cannot simply show that the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted). Instead, he must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by" the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

**I. ADA**

The ADA prohibits employers from discriminating against a qualified individual with a disability because of his or her disability. 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination based on failure to accommodate, a plaintiff must establish: (1) he is disabled within the meaning of the ADA, 29 C.F.R. § 1630.2(g); (2) he is qualified with a disability, 29 C.F.R. § 1630.2(m), 1630.3; and (3) the employer failed in its duty to make reasonable accommodations for the employee's disability, or he suffered an adverse employment action because of his disability, 29 C.F.R. § 1630.9. *See Fuller v. Frank, Postmaster Gen.*, 916 F.2d 558, 561 (9th Cir. 1990); *Bradley v.*

*Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996).

Banner contends Zaki is not a qualified individual. To determine if someone is a qualified individual, courts consider whether the individual can perform the essential functions of his position with or without a reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). "Unpaid medical leave may be a reasonable accommodation under the ADA. Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation *if it does not pose an undue hardship on the employee.*" *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (internal citations omitted). Stated differently, if Zaki's medical leave was a reasonable accommodation, then his inability to work during the leave period would not automatically render him unqualified.

Determining whether the proposed accommodation, Zaki's medical leave, was reasonable requires a fact-specific, individualized inquiry. "In the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Id.* Here, the undisputed facts show that Zaki's continued absence created an undue hardship on Banner. For instance, without a pediatric nephrologist on staff, Banner was required to send its patients elsewhere. Moreover, because Zaki lacked a RTW date, Banner could not plan to resume offering these services with any degree of certainty.

Even assuming that there is sufficient evidence from which a reasonable juror could conclude that extending Zaki's leave did not pose an undue hardship on Banner, summary judgment for Banner is warranted because Banner has offered a legitimate, non-discriminatory reason for Zaki's termination, which has not been rebutted with specific evidence of pretext. As discussed, Banner contends that Zaki was fired because of the hardship he was creating for the hospital and its patients. Specifically, Zaki's six-month absence and lack of a definite RTW date left Banner unable to render pediatric nephrology services and unable to formulate a plan for how to provide such services in

the immediate future. Although Zaki disagrees with Banner's determination that his absence created a hardship, he offers no evidence of this reason was not genuine or was pretextual for disability-related discrimination. Therefore, Banner is entitled to summary judgment on Zaki's ADA claim.

**II. Title VII**

To state a prima facie case of discrimination under Title VII, an employee must show that: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. *See Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). The proof required to establish the prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Zaki alleges Title VII claims for national origin and sex discrimination.

**A. National Origin**

Banner challenges only Zaki's ability to establish that he was treated differently than similarly situated, non-Egyptian physicians. (Doc. 111 at 11-12.) To establish that a defendant treated similarly situated employees more favorably, a plaintiff must show that his comparators are "similarly situated in all relevant respects." *Moran*, 447 F.3d at 755. In determining whether employees are similarly situated, courts evaluate "whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (quotation omitted); *see also Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) (finding comparators not similarly situated when they "did not engage in problematic conduct of comparable seriousness"). The quantity and quality of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Day v. Sears Holding Corp.*, 930 F. Supp. 2d 1146, 1163 (C.D. Cal. 2013) (quoting *Maniccia*, 171 F.3d at 1368).

Zaki offers Dr. Derby as a comparator, arguing that the two are similarly situated because both "were out for extended periods" and "unable to perform the functions of their respective jobs." (Doc. 118 at 12.) Dr. Derby, a pediatric cardiothoracic surgeon, initially was placed on paid administrative leave on November 14, 2013, and was provided a medical leave of absence in February 2014. (Doc. 112 ¶¶ 68, 69.) In April 2014, Dr. Derby was fully released to return to work with no restrictions, but because Dr. Derby did not have privileges to practice at Banner Desert Medical Center at that time, Banner granted him an unpaid leave of absence so that he could provide a plan to reacquire such privileges. (¶ 70.) Dr. Derby was terminated after he failed to offer a plan acceptable to Banner. (¶ 71.)

In comparison, Zaki was involved in an automobile accident, in which he suffered a serious traumatic brain injury. As a result of his brain injury, Zaki was medically unable to return to work. After exhausting his FMLA leave, Zaki still was not medically cleared to return to work. Banner, in an effort to accommodate Zaki's ongoing limitations, granted him additional leave. Three months later, Zaki still was medically unfit to return to work and did not have a RTW date. As a result, Banner terminated him.

Zaki cannot demonstrate that Dr. Derby was treated more favorably. After all, Dr. Derby and Zaki were disciplined in the same way: termination. To the extent that Dr. Derby receiving a longer leave of absence before termination could reasonably constitute more favorable treatment, Zaki's claim fails because he and Dr. Derby are not similarly situated. Although both Zaki and Dr. Derby "were out for extended periods" and "unable to perform the functions of their respective jobs," the nature of their circumstances was such that the two cannot be considered "nearly identical." (Doc. 118 at 12.) For instance, Zaki was Banner's only pediatric nephrologist, and his absence required the hospital to send patients elsewhere. There is no evidence suggesting that Dr. Derby played a similarly central role in his practice area for the hospital. *See White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1068 (D. Ariz. 2009). Moreover, the circumstances of their respective absences substantially differed. Dr. Derby was medically cleared to work and

simply needed to regain hospital privileges, whereas Zaki was not medically fit to return at the time of his termination. Accordingly, Zaki cannot establish a prima facie case of national origin discrimination on the basis of Banner's treatment of Dr. Derby.

**B. Sex Discrimination**

Banner also contends that "[t]he record is devoid of evidence that could even conceivably support a prima facie case for gender discrimination." (Doc. 111 at 12.) For instance, Zaki has put forth no evidence demonstrating that he was treated less favorably than other similarly situated, female physicians. Because Zaki has failed to satisfy the fourth criterion for establishing a prima facie case under Title VII, the Court grants summary judgment in favor of Banner.

**III. ADEA**

The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). To establish a prima facie case of an ADEA violation, the plaintiff must show he was: (1) a member of a protected class (at least forty years old); (2) performing his job in a satisfactory manner; (3) discharged; and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). The plaintiff also must prove, by a preponderance of the evidence, "that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Merely showing "some evidence that age was one motivating factor" is insufficient to shift the burden of persuasion "to the employer to show that it would have taken the action regardless of age[.]" *Id.* at 180.

It is undisputed that Zaki was over forty years old when discharged. The only questions, then, are whether Zaki was performing his job satisfactorily and whether he was discharged under circumstances giving rise to an inference of age discrimination.

Although Banner contests it, there is sufficient evidence on summary judgment that Zaki was performing his job as a nephrologist satisfactorily. *See, e.g.*, *Diaz v. Eagle*

*Produce Ltd. P'Ship*, 521 F.3d 1201, 1207 n. 2 (9th Cir. 2008) (finding "triable issue of fact" where plaintiffs demonstrated that they "generally performed dependably and without incident" and any "[d]eficiencies in [] performance were relatively minor and infrequent"); *Decker v. Barrick Goldstrike Mines, Inc.*, 645 Fed. App'x 565, 567 (9th Cir. 2016) (finding evidence that the plaintiff possessed "requisite training, experience, and knowledge to perform job satisfactorily" sufficient to survive summary judgment).

Nonetheless, Banner is entitled to summary judgment because Zaki proffers no evidence establishing the final element of his prima facie case. Where an employee's discharge did not occur in the context of a general reduction in the employer's workforce, "an employee can satisfy the last element of the prima facie case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications." *Diaz*, 521 F.3d at 1207 n. 2. Here, there is no evidence that Banner was engaging in a general workforce reduction. Nor has Zaki offered evidence that he was replaced by a "substantially younger employee." Therefore, Banner is entitled to summary judgment.

**IV. FMLA**

The FMLA provides job security and leave entitlements for employees who need to take absences from work for, among other things, personal medical reasons. 29 U.S.C. § 2612. The FMLA creates two interrelated substantive rights for employees. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, an employee has the right to take up to twelve weeks of leave for the reasons described above. 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a).

As described in greater detail in *Bachelder,* 29 U.S.C. § 2615(a) sets forth two different ways to protect these substantive rights. First, under § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." An allegation of

a violation of this section is known as a "discrimination" or "retaliation" claim. *See Bachelder*, 259 F.3d at 1124. Second, under § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by FMLA. When a party alleges a violation of § 2615(a)(1), it is known as an "interference" or "entitlement" claim. *Id.*

Where, as here, a plaintiff alleges retaliation for exercising his rights under the FMLA, the claim is properly analyzed as an interference claim under § 2615(a)(1). *See id*; *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n. 7 (9th Cir. 2003) (noting that in the Ninth Circuit claims that a plaintiff was subjected to an adverse employment action for taking FMLA protected leave are properly brought under 2615(a)(1)). To sustain an FMLA interference claim, a plaintiff must show by a preponderance of the evidence that: (1) the plaintiff took or requested protected leave; (2) the employer subjected the plaintiff to an adverse employment action; and (3) the taking of or requesting protected leave was a "negative factor" in the adverse employment decision. *See Bachelder*, 259 F.3d at 1125; 29 C.F.R. § 825.220(c). A plaintiff may prove an interference claim "by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125.

It is undisputed that Zaki took protected leave and that his termination was an adverse employment action. Banner argues, however, that there is no evidence that protected leave was a negative factor in the decision to terminate Zaki. (Doc. 111 at 16-17.) In response, Zaki fails to identify any facts supporting his claim that his exercise of FMLA rights was a factor in his termination. (Doc. 118.) After review of the record, the Court also finds no such facts. Therefore, Banner is entitled to summary judgment on Zaki's FMLA claim.

**V. Breach of Covenant of Good Faith and Fair Dealing**

Zaki alleges that Banner breached the implied covenant of good faith and fair dealing by failing to fulfill five obligations allegedly owed to him under his employment contract. (¶¶ 101-118.) Specifically, Zaki contends that Banner failed to: (1) compensate

him for excess on-call coverage, (2) hire an additional physician specializing in pediatric nephrology, thereby causing him to be unable to use his accrued paid time off ("PTO"), (3) compensate for his unused PTO, (4) pay his base salary during the ninety-day termination notice period, and (5) pay him under Banner's Physician Incentive Plan (PIP) for 2014. (*Id.*)

Banner contends that Zaki's breach of the implied covenant claim is subject to the 1-year statute of limitation applicable to breach of contract claims under A.R.S. § 12-541 because the claim derives from his employment contract. (Doc. 111 at 17.) The Court disagrees. "It is undisputed that under Arizona law, the applicable period of limitations for [] breach of the covenant of good faith and fair dealing . . . is two years." *Lory v. Fed. Ins. Co.*, 122 Fed. App'x 314, 317 (9th Cir. 2005) (citing A.R.S. § 12-542)). Moreover, Arizona applies the discovery rule, under which "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 966 (Ariz. 1995). Thus, Zaki's breach of implied covenant claim is untimely only if it was not brought within two-years after he knew or reasonably should have known the underlying facts.

The Court, in a prior order (Doc. 36), determined when Zaki knew or reasonably should have known the underlying facts to each of his breach of implied covenant claims. First, "Zaki's claim that Banner failed to compensate him for excess on-call coverage accrued on July 30, 2014, the last date upon which Banner would have owed him compensation from excess on-call coverage." (Doc. 36 at 4.) Second, "Zaki's claim that Banner failed to compensate him for unused PTO accrued, at the latest, by the end of 2014, the last year in which Zaki could have accrued PTO." (*Id.*) Third, "Zaki's claim that Banner failed to pay him his base salary during the ninety-day termination notice period accrued no later than April 12, 2015, two weeks after his effective termination on March 29, 2015." (*Id.*) Fourth, "Zaki claims that Banner failed to pay his 2014 PIP incentive, but that breach occurred sometime in April 2015, when Banner paid PIP

incentives to other physicians but not to Zaki." (*Id.* at 4-5.) All four of these claims were timely filed in Zaki's initial complaint, which was filed on June 14, 2016.

In contrast, "Zaki's claim that Banner failed to provide relief from excess on-call coverage by hiring an additional specialist accrued, at the latest, on June 3, 2014." (*Id.* at 4.) The Court reasoned, "[g]iven that Banner allegedly failed to provide relief from excess on-call coverage throughout Zaki's employment, Zaki certainly would have known that a cause of action existed by his last day of work." (*Id.*) This claim was filed beyond the two-year limitations period, and thus is time-barred. Therefore, Banner's motion for summary judgment is granted as to Zaki's claim that Banner failed to provide relief from excess on-call coverage by hiring an additional specialist, but denied as to the remainder of the timely allegations upon which this count is based. Accordingly,

**IT IS ORDERED** that Banner's motion to strike (Doc. 120) is **DENIED** and its motion for summary judgment (Doc. 111) is **GRANTED in part and DENIED in part** as follows:

1. Summary Judgment is **GRANTED** in favor of Banner on Counts I, II, III, and IV of Zaki's first amended complaint.

2. Summary Judgment is **GRANTED in part and DENIED in part** in favor of Banner on Count VII of Zaki's first amended complaint. As explained herein, summary judgment is granted as to Zaki's claim that Banner failed to provide relief from excess on-call coverage by hiring an additional specialist, but denied as to the remainder of the allegations upon which this count is based.

//
//
//
//
//
//
//

1    **IT IS FURTHER ORDERED** that the parties appear for a Telephonic Status
2    Conference set for **October 9, 2018 at 9:00 a.m.** in Courtroom 606, 401 West
3    Washington Street, Phoenix, AZ 85003 before Judge Douglas L Rayes to discuss setting
4    a trial date. Counsel for Plaintiff is responsible for making the necessary arrangements for
5    the conference call. All parties participating in the conference call shall do so via a
6    landline only. The use of cellular phones will not be permitted.
7    Dated this 26th day of September, 2018.

Douglas L. Rayes
United States District Judge